Deborah S. McPHERSON, Individually and as Executrix and Personal Representative of the Estate of Marc McPherson, Deceased, and as legal guardian for the minor child, Jeremy S. Creech

v.

UNION OIL COMPANY OF CALIFORNIA, et al.

Civ. A. No. H–83–1574.

United States District Court, S.D. Texas, Houston Division.

July 15, 1985.

Michael Perrin, Fisher, Gallagher, Perrin & Lewis, Houston, Tex., for plaintiff McPherson.

G. Wesley Urquhart, Vinson & Elkins, Houston, Tex., for Offshore Logistics, Inc.

Vilhelm Hesness, Houston, Tex., Attorney Ad Litem.

L.S. Carsey, Fulbright & Jaworski, Houston, Tex., for Air Logistics, Div. of Offshore Logistics, Inc., Heliflight Systems, Inc., Air Logistics, Inc.

Kenneth D. Kuykendal, Royston, Rayzor, Vickery & Wms, Houston, Tex., for Union Oil Co. of California.

Eric D. Archer, Ensearch Corp., Dallas, Tex., for Pool Offshore Co.

Thomas A. Brown, Brown, Sims & Ayre, Houston, Tex., for Offshore Production Contractors.

Larry F. York, Baker & Botts, Austin, Tex., for Manufacturers Hanover Leasing, and Bell Helicopter Textron, Inc.

## MEMORANDUM AND ORDER

NORMAN W. BLACK, District Judge.

Pending before this Court is Defendant The United States of America's Motion to Dismiss Plaintiff's Second Amended Complaint. The United States requests that its Motion to Dismiss Plaintiff's First Amended Complaint with attached memorandum of law be extended to Plaintiff's Second Amended Complaint. In view of the similarity of the relevant allegations contained in the respective complaints, the Court grants this request. After due consideration of the motion, plaintiff's reply and the legal arguments interposed by counsel, the Court concludes that the instant motion is meritorious.

*Background*

Defendant argues that plaintiff's allegations against it should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6). The Court notes however that the instant motion is predicated in part on the doctrine of sovereign immunity. Various courts have characterized such challenges as implicating jurisdictional considerations. *See Williams By and Through Sharpley v. United States*, 581 F.Supp. 847 (S.D.Ga.1983), *aff'd*, 747 F.2d 700 (11th Cir.1984). Other courts have analyzed such challenges as

arising under Fed.R.Civ.P. 12(b)(6). *See Canadian Transport Co. v. United States,* 430 F.Supp. 1168 (D.D.C.1977), *aff'd in part, rev'd in part,* 663 F.2d 1081 (D.C.Cir. 1980). The Court will treat the instant motion as arising under Rule 12(b)(6) because the relevant issues and means of analysis are unaffected by the designation of the instant motion.

A court confronted with a motion to dismiss brought under Fed.R.Civ.P. 12(b)(6) must not dismiss a complaint for failure to state a claim unless it appears beyond doubt that the pleader can prove no set of facts in support of the claim which would entitle him to relief. *Conley v. Gibson,* 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court must construe the allegations of the complaint in favor of the pleader and consider all well pleaded, material factual allegations as true. *Scheuer v. Rhodes,* 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974); *Jenkins v. McKeithen,* 395 U.S. 411, 89 S.Ct. 1843, 23 L.Ed.2d 404 (1969).

### Facts

Accordingly, the facts of the instant controversy are as follows. Plaintiff's decedent, Marc McPherson, was a helicopter pilot employed to transport men and supplies to and from certain offshore drilling rigs. On March 2, 1982, McPherson piloted a Bell 206B helicopter to the vicinity of a fixed oil drilling platform owned by Union Oil of California. This auxiliary platform was located at High Island Block 334B in the Gulf of Mexico, 117 miles south-southwest of Cameron, Louisiana. As McPherson attempted to land the helicopter on the platform's helipad, the aircraft struck the surrounding safety netting and crashed into the Gulf.

Subsequently, the widow of the deceased pilot filed this wrongful death and survival action individually and on behalf of McPherson's estate and his minor child, Jeremy Creech. Plaintiff seeks an award of damages against various defendants, including the United States of America.

### Claims

The plaintiff seeks to impose liability on the United States for certain allegedly negligent acts or omissions of the Federal Aviation Administration (FAA) and the United States Coast Guard. The plaintiff's claims may be characterized as follows. First, the plaintiff asserts that the above-referenced entities negligently failed to promulgate certain safety standards. Second, the plaintiff alleges that the FAA negligently performed certain approval and certification procedures.

### Negligent Failure to Regulate

The plaintiff alleges that the FAA and the U.S. Coast Guard are charged with regulating and promoting aviation safety and with regulating and inspecting drilling platforms and landing areas in the Gulf of Mexico. Further, the plaintiff alleges that these agencies are charged with the duty of ensuring that helipads on drilling platforms are properly marked, lighted, equipped with safety devices and are of adequate size and construction. The plaintiff maintains that these entities negligently failed to require that the accident site be properly marked, lighted, constructed and equipped. Plaintiff asserts that such negligence caused or was a substantial factor in causing Mr. McPherson's death.

Additionally, the plaintiff maintains that the FAA is responsible for ensuring that commercial helicopters are properly maintained, supervised, inspected, equipped and operated. Apparently, the plaintiff contends that the FAA negligently failed to issue certain safety regulations to promote the safety of the accident helicopter. The plaintiff asserts that such negligence caused or was a substantial factor in causing Mr. McPherson's death.

### Negligent Approval and Certification

Finally, the plaintiff alleges that the FAA negligently approved and certified the operations manual and procedures of Defendant Air Logistics. Plaintiff alleges that such negligence caused or was a substantial factor in causing Mr. McPherson's death.

*The Government's Position*

The United States argues that it is under no duty to issue regulations regarding helipads on stationary offshore oil rigs. Accordingly, the United States argues that it may not be held liable in tort for any failure to issue such regulations. Additionally, the United States maintains that it is under no duty to ensure that commercial helicopters remain in an airworthy condition after the issuance of an air taxi certificate. Consequently, the United States argues that allegations regarding failure to ensure proper maintenance and operation of the accident helicopter do not articulate any cognizable action in tort. Finally, the United States argues that the plaintiff may not maintain any action premised upon the FAA's allegedly negligent approval and certification of the operations manual and procedures of defendant Air Logistics. In this instance, the government argues that the plaintiff is attempting to obtain judicial review of discretionary regulatory activity through the vehicle of a tort suit. The government argues that separation of powers principles prohibit judicial review of discretionary regulatory activities.

In response, the plaintiff argues that certain statutory provisions require the FAA to issue regulations concerning the safety of helicopters. Similarly, the plaintiff argues that the United States Coast Guard is statutorily required to issue regulations regarding helipads "on or under" the high seas. In both instances the plaintiff alleges that these statutory mandates have been ignored. The plaintiff alleges that this failure to regulate is a proper basis for liability.

*Issues*

It would appear that the issues to be addressed are as follows: (1) Does the United States, through the FAA and Coast Guard, have a duty to issue regulations regarding helipads on fixed oil drilling platforms? (2) Does the United States, through the FAA, have a duty to issue specific regulations regarding specific safety requirements (such as mandatory inclusion of proper shoulder harnesses in helicopters)? (3) In a related vein, does the United States, through the FAA, have a duty to ensure that an aircraft remain in an airworthy condition after the issuance of an air taxi certificate? (4) Do separation of powers principles prohibit judicial review of FAA acceptance and certification procedures subject of this suit?

*Discussion*

■ As an initial matter, it would appear that the instant action is within this Court's admiralty jurisdiction. It is established in this circuit that the Death on the High Seas Act, 46 U.S.C. § 761 *et seq.* (DOHSA) applies to a helicopter crash on the high seas. *See Tallentire v. Offshore Logistics, Inc.,* 754 F.2d 1274 (5th Cir.1985), *cert. granted,* — U.S. —, 106 S.Ct. 60, 88 L.Ed.2d 48 (1985); *Smith v. Pan Air Corp.,* 684 F.2d 1102 (5th Cir. 1982) (An accident occurred after the rotor blade of a helicopter struck a crane ball hanging from the arm of a crane situated on a fixed platform. The court held that DOHSA and admiralty substantive law governed the claim.)

■ Jurisdiction against the United States in admiralty must be founded on the Suits in Admiralty Act, 46 U.S.C. §§ 741 *et seq.* (SAA), *McCormick v. United States,* 680 F.2d 345 (5th Cir.1982). The act provides that appropriate proceedings may be brought against the United States "in cases where ... if a private person or property were involved, a proceeding in admiralty could be maintained." 46 U.S.C. § 742. The act encompasses "all maritime tort claims against the United States where the plaintiff would have an action in admiralty were the defendant a private person rather than the government." *McCormick,* 680 F.2d at 349. If an action is properly maintainable under the SAA, it may not be brought under the Federal Tort Claims Act. *Id.;* 28 U.S.C. § 2680(d).

*Failure to Regulate*

To articulate a cognizable cause of action in tort, the plaintiff must establish that the government owed the decedent a duty to

issue regulations relating to helipads on fixed oil drilling platforms. The plaintiff must identify a statute or common law principle imposing such a duty. The plaintiff argues that § 2 of the Coast Guard Act, 14 U.S.C. §§ 1 *et seq.* imposes such a duty. The section provides in pertinent part:

> The Coast Guard shall ... promulgate and enforce regulations for the promotion of safety of life and property on and under the high seas and waters subject to the jurisdiction of the United States governing all matters not specifically delegated by law to some other executive department.

■ The plaintiff argues that this section requires the Coast Guard to issue regulations relating to helicopter landing facilities on fixed offshore drilling units. The defendant argues that the plaintiff has mistaken statutory authority to regulate for a duty to issue specific regulations. This Court agrees. As the court observed in *Faust v. South Carolina State Highway Department,* 721 F.2d 934, 938 (4th Cir. 1983), *cert. denied,* 467 U.S. 1226, 104 S.Ct. 2678, 81 L.Ed.2d 874 (1984), the "assumption by the government of authority to regulate a particular activity should not render it liable in tort when it fails to exercise that authority to protect an individual from injury" (citing *Zabala Clemente v. United States,* 567 F.2d 1140 (1st Cir.1977), *cert. denied,* 435 U.S. 1006, 98 S.Ct. 1876, 56 L.Ed.2d 388 (1978). It follows then that the instant statute does not impose a duty upon the Coast Guard to issue specific regulations that a particular member of the public might find desirable. Nor has the plaintiff identified any comparable "private person" duty derived from common law principles.[1] In the absence of such a duty imposed by statute, regulation or common law, there is no basis for tort liability.

Further, it does not appear that the FAA is under a duty to issue specific regulations regarding specific safety requirements absent a specific legislative mandate or comparable private person duty. The plaintiff argues that 49 U.S.C. § 1421(a)(1) provides such a statutory mandate. The Section provides:

> (a) The Administrator is empowered and it shall be his duty to promote safety of flight of civil aircraft in air commerce by prescribing and revising from time to time:
>
> (1) such minimum standards governing the design, materials, workmanship, construction, and performance of aircraft ... as may be required in the interest of safety.

■ Again, the plaintiff argues that this section imposes a duty on the FAA to issue regulations concerning specific safety measures such as installation of shoulder harnesses. This Court cannot agree. As the court in *Garbarino v. United States,* 666 F.2d 1061, 1065 (6th Cir.1981) observed, 49 U.S.C. § 1421(a)(1)–(6) "requires only that the administrator prescribe such minimum standards as may be required in the interests of safety. Deciding what those standards are to be and whether such standards are to include [certain] ... criteria, is the type of policy decision" that is committed to the agency's discretion. *Id.; see also Fielder v. United States,* 423 F.Supp. 77 (C.D.Cal.1976). As a general rule, the mere fact that a statute grants a power to act does not create a liability for damages resulting from failure to exercise such power. Thus, a statute which merely makes provision to secure the safety or welfare of the public as an entity, is not subject to a construction establishing civil liability. 73 Am.Jr.2d, *Statutes* § 432. "It is obvious that one of the purposes of the Federal Aviation Act was to promote air travel safety; but this fact hardly creates a legal duty to provide a particular class of

---

**1.** To the extent that the plaintiff relies on *Indian Towing Co. v. United States,* 350 U.S. 61, 76 S.Ct. 122, 100 L.Ed. 48 (1955), such reliance is misplaced. In *Indian Towing* the Supreme Court held that when the government gratuitously undertakes to perform a service upon which members of the public rely, it must perform the service in a careful manner. This "good samaritan" doctrine does not apply to the instant scenario.

passengers particular protective measures." *Zabala Clemente v. United States,* 567 F.2d at 1144. Thus, in the absence of a statute explicitly requiring the agency to issue specific safety regulations, we must attempt to identify a comparable "private person" duty. As indicated above, the plaintiff has failed to identify such a duty.

■ In addition, the plaintiff argues that the United States, through the FAA, has a duty to ensure that an aircraft remains in an airworthy condition even after the issuance of an air taxi certificate. It appears, however, that the duty to ensure that an aircraft remains in an airworthy condition lies with the operator. See 14 C.F.R. §§ 135.25(a)(2), 135.71. The FAA merely polices compliance. As the Supreme Court observed in *United States v. S.A. Empresa De Viacao Aerea Grandense (Varig Airlines),* 467 U.S. 797, 104 S.Ct. 2755, 2769, 81 L.Ed.2d 660 (1984), the FAA "has a statutory duty to promote safety in air transportation, not to insure it."

### Negligent Certification

■ Finally, the plaintiff alleges that the United States, through the FAA, negligently approved and certified the operations manual and procedures of Defendant Air Logistics. In this instance, the United States argues that the certification procedure is a discretionary regulatory function. Accordingly, the United States argues that separation of powers principles preclude judicial review of such actions in the guise of a tort suit under the SAA.[2]

As an initial matter, it is apparent that the certification procedure subject of this suit is in the nature of a discretionary regulatory function. *See Varig Airlines,* 104 S.Ct. at 2755 (discretionary function exception to FTCA precludes a tort action based upon the conduct of the FAA in

certificating aircraft for use in commercial aviation).

Although the SAA contains no explicit discretionary function exception, the government argues that separation of powers principles require the judiciary to refrain from reviewing the propriety of discretionary actions. The government's argument is primarily predicated upon the rationale utilized by courts to support "engrafting" the discretionary function exception provided in the Federal Tort Claims Act on to the Suits in Admiralty Act. In *Canadian Transport Co. v. United States,* 663 F.2d 1081, 1085 (D.C.Cir.1980), the court observed:

> We believe that the doctrine of separation of powers requires that in cases arising under the Suits in Admiralty Act, courts should refrain from passing judgment on the appropriateness of actions which meet the requirements of the discretionary function exception of the FTCA.

The court noted that while the legislative history of the Suits in Admiralty Act is inconclusive on the point, the legislative history of the FTCA "suggests that the exemption for discretionary functions ... was derived from the doctrine of separation of powers, a doctrine to which the courts must adhere even in the absence of a statutory command." *Id.* at 1086. The court relied upon *Dalehite v. United States,* 346 U.S. 15, 73 S.Ct. 956, 97 L.Ed. 1427 (1953). In *Dalehite* the Supreme Court observed that the exception "was drafted as a clarifying amendment." *Id.* at 26, 73 S.Ct. at 963. The *Dalehite* court referred to the testimony of the Assistant Attorney General who advised that " 'the cases embraced within [the new] subsection would have been exempted from [the prior bill] by judicial construction.' " *Id.* at 27, 73 S.Ct. at 963 (quoting statement by Assistant Attorney General Francis M. Shea at hearings before the House Committee on

---

**2.** It would appear that this argument would apply with equal force to those claims predicated upon the government's failure to regulate. As indicated above, decisions regarding the type and scope of safety regulations are within agen-

cy discretion. *See Garbarino,* 666 F.2d 1061; *Miller v. United States,* 522 F.2d 386, 387 (6th Cir.1975). Accordingly, as the text below indicates, separation of powers principles preclude review of these types of basic policy decisions.

the Judiciary, 77th Cong. 2d Sess., on H.R. 5373 and H.R. 6463, p. 29). As the Supreme Court noted in *Varig Airlines, supra,* 104 S.Ct. at 2763, Congress "believed that claims of the kind *embraced by the discretionary function exception* would have been exempted from the waiver of sovereign immunity by judicial construction." (emphasis added).

The plaintiff relies primarily upon *De-Bardeleben Marine Corp. v. United States,* 451 F.2d 140 (5th Cir.1971) in support of her argument that the SAA is not subject to an implied discretionary function exception. This Court concludes that *De-Bardeleben* does not ineluctably support rejection of the government's position. The specific issue presented in *DeBardeleben* was the propriety of engrafting the FTCA's misrepresentation exception on to the SAA. Thus, any endorsement of the view that the SAA is not subject to an implied discretionary function exception is dictum. Second, in light of *Varig Airlines,* it would appear that the issue confronting this Court is not the propriety of importing FTCA exceptions. Rather, the Court is compelled to recognize the inherent limitations on the exercise of judicial functions. This Court must decline the invitation to second-guess the propriety of a discretionary regulatory function. *See Gemp v. United States,* 684 F.2d 404, 408 (6th Cir. 1982); *Gercey v. United States,* 540 F.2d 536, 539 (1st Cir.1976), *cert. denied,* 430 U.S. 954, 97 S.Ct. 1599, 51 L.Ed.2d 804 (1977); *Estate of Callas v. United States,* 682 F.2d 613, 619 (7th Cir.1982); *Canadian Transport Co.,* 663 F.2d at 1081; *Williams By and Through Sharpley,* 581 F.Supp. at 847; *In Re: Ocean Ranger Sinking Off Newfoundland on February 15, 1982,* 632 F.Supp. 72 (E.D.La.1985).

Accordingly, it is ORDERED that the United States of America's Motion to Dismiss Plaintiff's Second Amended Complaint is GRANTED. It is therefore ORDERED that all actions filed against the United States herein are DISMISSED WITH PREJUDICE.