Janice BON, Plaintiff-Appellant,

v.

UNITED STATES of America,
Defendant-Appellee.

No. 85–5968.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 7, 1986.

Decided Sept. 10, 1986.

Designated for Publication Oct. 21, 1986.

Frederick A. Meiser, Jr., Jan Kendrick, Klinedinst & Meiser, San Diego, Cal., for plaintiff-appellant.

Jeanne M. Franken, U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before TANG and BRUNETTI, Circuit Judges, and JAMESON,* District Judge.

JAMESON, District Judge:

Janice Bon brought this action under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–80, seeking damages for injuries sustained while using the facilities and equipment of the Special Services Center at the Naval Training Center in San Diego. The district court granted the Government's motion to dismiss the complaint for lack of subject matter jurisdiction under the *Feres* doctrine, which holds that a member of the armed services may not recover for the Government's otherwise tortious conduct where the plaintiff's injuries "arise out of or are in the course of an activity incident to service." *Feres v. United States*, 340 U.S. 135, 146, 71 S.Ct. 153, 159, 95 L.Ed. 152 (1950). We affirm.

### I. *Background*

At the time of the accident Bon was on active duty with the United States Navy. The accident occurred on or near a Navy Special Services facility at the Naval Training Center in San Diego.[1] Bon and another individual were in a canoe rented from the Special Services Center. Her injuries occurred when a motor boat owned by the Government struck her canoe. The motor boat had also been rented from Special Services and was operated by an active duty service member. Both Bon and the operator of the motor boat were on authorized liberty and were not engaged in official duties.

The Naval Special Services Center is operated by the Naval Training Center and is under the direct responsibility of the commanding officer of the Naval Training Center. The purpose of the Special Services Center is to "provide for Navy personnel and their dependents a varied program of wholesome and constructive off-duty leisure and recreation activities which will effectively contribute to the mental and physical well being of the participants." (Special Services Recreation Manual). Base rules and regulations govern the rental and operation of boats at the Naval Training Center. In addition, Special Service Department guidelines also govern the rental services. At all times relevant, both Bon and the operator of the motor boat were subject to military discipline for any violations of these rules, regulations, and guidelines.

### II. *Contentions on Appeal*

The sole issue on appeal is whether the *Feres* doctrine bars Bon's claim for relief. Bon claims that the *Feres* doctrine does not apply because (1) at the time of the accident she was officially off-duty and the recreational activities in which she was engaged were in no way related to her official duties, and (2) neither she nor the other off-duty service member involved in the accident was subject to military discipline or was participating in activities under direct military command. The Government contends that Bon and the other service member involved in the accident were en-

---

* The Honorable William J. Jameson, Senior United States District Judge for the District of Montana, sitting by designation.

1. There is some dispute as to the location of the accident. Bon claims that it occurred outside the boundaries of the Naval Training Center. The Government contends that the accident occurred within the boundaries of the Center. The effect of this dispute over the location of the accident will be discussed below.

gaged in an activity which has an express military purpose and which is governed by military regulations and rules. Consequently, the Government argues, the district court correctly applied the *Feres* doctrine.

### III. *Standard of Review*

This court reviews de novo the district court's dismissal of Bon's complaint for lack of subject matter jurisdiction. *Clayton v. Republic Airlines, Inc.,* 716 F.2d 729, 730 (9th Cir.1983) (citing *Phoenix Title & Trust Co. v. Stewart,* 337 F.2d 978, 985 (9th Cir.), *cert. denied,* 380 U.S. 979, 85 S.Ct. 1335, 14 L.Ed.2d 273 (1964)).

### IV. *The Feres Doctrine*

■ Under the *Feres* doctrine courts lack subject matter jurisdiction to adjudicate claims by members of the armed services where the injuries complained of "arise out of or are in the course of activity incident to service." 340 U.S. at 146, 71 S.Ct. at 159.[2] This court has held that the determination of whether an activity is incident to service must focus on the potential impact of a civil action on military discipline. *Johnson v. United States,* 704 F.2d 1431, 1436 (9th Cir.1983). Thus, "the most important line of inquiry [is] the nature of the plaintiff's activities at the time of the government's tortious action." *Id.* The Supreme Court has recently confirmed this approach. *United States v. Shearer,* — U.S. ——, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985). Application of the *Feres* doctrine necessarily involves a case-by-case analysis. *Id.* at 3043.

In *Johnson* this court looked to the following four factors to determine whether an activity is incident to military service:

(1) the place where the negligent act occurred;

(2) the duty status of the plaintiff when the negligent act occurred;

(3) the benefits accruing to the plaintiff because of his status as a service member; and

(4) the nature of the plaintiff's activities at the time the negligent act occurred.

704 F.2d at 1436–41.

In *Johnson,* the plaintiff, an active-duty service member, during his off-duty time worked as a bartender at the base noncommissioned officers club (NCO club). The plaintiff was injured in an automobile accident which occurred off-base. The automobile was driven by another off-duty service member who also worked as a bartender at the NCO club. Prior to the accident both the plaintiff and the driver had attended an after hours party at the club. The party was conducted in violation of both state law and military regulations. While driving the plaintiff home, the driver, who was legally intoxicated, ran off the road. The plaintiff claimed that the Government's negligence in operating the NCO club was a proximate cause of his injuries. The Government claimed that the *Feres* doctrine barred recovery.

Applying the four factors listed above, this court found that the plaintiff was subject to military discipline only in the most remote sense. *Id.* at 1440. Consequently, he was not engaged in an activity incident to military service, and the *Feres* doctrine did not bar his recovery. *Id.*

In *Roush v. United States,* 752 F.2d 1460, 1463 (9th Cir.1985), this court again emphasized the need to focus on the impact on the military disciplinary structure. As in *Johnson,* the plaintiff alleged that the Government's negligent operation of an on-base service members' club was a proximate cause of his injuries. The plaintiff, an active duty service member, attended the club while he was off duty. His injuries occurred when the club's bouncer

---

2. The Government contends that sole jurisdiction, if any, properly would lie under the Public Vessels Act, 46 U.S.C. §§ 781–790, or the Suits in Admiralty Act, 46 U.S.C. §§ 741–52. Although *Feres* dealt specifically with claims brought under the Federal Tort Claims Act, the doctrine is equally applicable to suits in which jurisdiction against the United States is alleged under either the Public Vessels Act or the Suits in Admiralty Act. *See Charland v. United States,* 615 F.2d 508, 509 (9th Cir.1980), *see also Potts v. United States,* 723 F.2d 20, 21–22 (6th Cir.1983), *cert. denied,* 466 U.S. 959, 104 S.Ct. 2172, 80 L.Ed.2d 555 (1984).

evicted him from the club. The bouncer was another active duty service member who was working at the club while off-duty. The district court dismissed the plaintiff's complaint for lack of subject matter jurisdiction under the *Feres* doctrine. On appeal this court distinguished *Johnson* on the basis that Roush's presence at the club was a direct result of his status as a member of the military. Whereas in *Johnson* the plaintiff's use of the Government's facilities could not be distinguished from that of an ordinary civilian, Roush's use of the facilities arose solely by virtue of his status as a member of the military. *Id.* at 1464. The court remanded for a determination of the extent of the military's direct control of the facility when the negligent act occurred. *Id.* at 1465. The court noted that sufficient control could be shown by the existence of federal statutes or regulations "providing that persons in the relation of the [the plaintiff and the bouncer] were within the direct control of the military at the time the negligent act occurred...." *Id.* at 1464.

■ The present case is more closely analogous to *Roush* than it is to *Johnson.* In this case, however, the control of the military over the activity involved is sufficiently evidenced in the record, and there is no need to remand to the district court. Bon's activities were sufficiently incident to service to deprive the court of jurisdiction.

First, the accident occurred on or near the Special Services Center.[3] Although the location of the accident is not controlling, it is an important factor. *Shearer,* 105 S.Ct. at 3043. Second, both Bon and the driver of the motor boat were active duty service members. While neither was engaged in an official duty, both were taking part in an activity provided for the benefit of their military service. The final two *Johnson* factors carry the most weight in this case. The benefits accruing to plaintiff because of her status as a member of the military and the nature of her activities at the time of the negligent act clearly indicate that the activity was incident to military service.

■ Unlike *Johnson,* but similar to *Roush,* Bon enjoyed the use of the Special Services Center solely by virtue of her status as a member of the military. She did not occupy a status similar to that of any civilian with respect to her presence on and use of the Special Service Center's facilities. *Cf. Johnson,* 704 F.2d at 1438–39. The record clearly indicates that use of the Special Services Center was restricted to members of the military and employees of the Department of Defense and their guests and dependents. Finally, the nature of the activity was such that its entire scope was subject to military orders and discipline. Both Bon and the motor boat operator were subject to discipline for violations of the Special Service rules governing their use of its facilities and equipment.[4] In addition, the Special Service Center itself was directly under the control of the commanding officer of the San Diego Naval Training Center. In *Johnson,*

---

**3.** Although the location of the accident is in dispute, this dispute does not prevent dismissal of this action. As stated above, location is important but not controlling. Here, the Government argues that if the accident occurred outside the boundaries of the Naval Training Center, both Bon and the motor boat operator would be in violation of the Special Service rules regarding their use of Special Service facilities and equipment. Consequently, the link between the activity and the military disciplinary structure is not broken by their presence outside the boundaries of the Naval Training Center. In fact, their presence outside the boundaries of the Naval Training Center would further strengthen the connection between the activity and the military disciplinary structure.

**4.** Bon contends that the parties were not under direct military command because there was no one of rank present actually giving orders and because no punitive sanctions were imposed. These contentions are without merit. There is no authority which suggests that it is necessary to show that a military superior exerted any direct physical control at the time of the alleged negligent act or that any disciplinary sanctions were actually imposed as a result. Rather, the *Feres* doctrine will apply if there are any statutes or regulations having the effect of law which demonstrate that the parties were subject to the direct control of the military. *Roush,* 752 F.2d at 1464.

the plaintiff was subject to military discipline only in the sense that members of the military are at all times subject to the orders of their commanding and superior officers. Here, however, Bon was subject to military orders and regulations for the particular activity in which she was engaged. The presence of direct military control is sufficient to establish the activity as incident to military service. The protection of the military disciplinary structure, as required by *Feres* and *Johnson,* compels the conclusion that subject matter jurisdiction is lacking.

AFFIRMED.