**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

WALTER DANIEL, individually and as
personal representative of the estate
of Rebekah Daniel,
*Plaintiff-Appellant*,

v.

UNITED STATES OF AMERICA,
*Defendant-Appellee.*

No. 16-35203

D.C. No.
3:15-cv-05748-
RJB

OPINION

Appeal from the United States District Court
for the Western District of Washington
Robert J. Bryan, Senior District Judge, Presiding

Argued and Submitted April 11, 2018
Seattle, Washington

Filed May 7, 2018

Before: Michael Daly Hawkins and Susan P. Graber,
Circuit Judges, and James A. Teilborg,[*] District Judge.

Opinion by Judge Hawkins

---

[*] The Honorable James A. Teilborg, United States District Judge for
the District of Arizona, sitting by designation.

## SUMMARY[**]

### *Feres* Doctrine

The panel affirmed the district court's Fed. R. Civ. P. 12(b)(1) dismissal of plaintiff's tort action brought against the United States for the tragic death of his wife, who was serving in the Navy, as barred by the jurisdictional bar recognized in *Feres v. United States*, 340 U.S. 135 (1950).

The Federal Tort Claims Act effected a broad waiver of sovereign immunity, rendering the United States liable for the tortious acts of its employees as a private individual would be under like circumstances. The *Feres* doctrine limits the Act's waiver of sovereign immunity, and provides governmental immunity from tort claims involving injuries to service members that were "incident to military service."

The panel followed the holding in *Atkinson v. United States*, 825 F.2d 202 (9th Cir. 1987), which similarly involved medical treatment of an active duty service person at a domestic military hospital for a condition of pregnancy unrelated to military service. The panel concluded that plaintiff's medical malpractice claims were barred by the *Feres* doctrine.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

## COUNSEL

J. Andrew Hoyal II (argued), Luvera Law Firm, Seattle, Washington, for Plaintiff-Appellant.

Lowell Sturgill Jr. (argued), Appellate Staff, Civil Division, United States Department of Justice, Washington, D.C.; Sarah K. Morehead and Patricia D. Gugin, Assistant United States Attorneys; Annette L. Hayes, United States Attorney; United States Attorney's Office, Seattle, Washington; for Defendant-Appellee.

## OPINION

HAWKINS, Circuit Judge:

We must determine whether the oft-criticized jurisdictional bar recognized in *Feres v. United States*, 340 U.S. 135 (1950)[1] (commonly known as the "*Feres* doctrine")—providing governmental immunity from tort claims involving injuries to service members that are "incident to military service"—bars Walter Daniel's tort action against the United States for the tragic death of his wife, Navy Lieutenant Rebekah Daniel, due to a complication following childbirth. As we have done many times before, we regretfully reach the conclusion that his claims are barred by the *Feres* doctrine and, therefore, affirm.

---

[1] *See United States v. Johnson*, 481 U.S. 681, 700 (1987) (Scalia, J., dissenting) ("*Feres* was wrongly decided and heartily deserves the widespread, almost universal criticism it has received." (internal quotation marks omitted)).

**BACKGROUND**

Like most cases implicating the *Feres* doctrine, the claims at issue here arise out of personal tragedy. *See, e.g.*, *Ritchie v. United States*, 733 F.3d 871, 873 (9th Cir. 2013); *Costo v. United States*, 248 F.3d 863, 864 (9th Cir. 2001). Rebekah Daniel served honorably as a Lieutenant in the United States Navy, and she worked as a labor and delivery nurse stationed at the Naval Hospital in Bremerton, Washington.  Walter Daniel is a Lieutenant Commander in the United States Coast Guard.

In 2013, Rebekah and Walter learned that they were expecting a daughter.  Rebekah made arrangements to resign from her post, and with the family leave she planned to take following the birth of her daughter, she did not expect to resume her duties prior to her anticipated detachment from service in May 2014.  On March 9, 2014, while still on active duty status, Rebekah was admitted to Naval Hospital Bremerton as a patient and gave birth to her daughter.  Although her pregnancy had been considered low-risk, Rebekah experienced postpartum hemorrhaging and died approximately four hours after delivery.

Following Rebekah's sudden death, Walter initiated the proceedings giving rise to this appeal.  In his complaint, Walter, individually and acting as the personal representative of Rebekah's estate, asserted claims of medical malpractice and wrongful death premised on allegations that Rebekah's death resulted from the negligence of the medical staff at Naval Hospital Bremerton. On a motion by the Government under Federal Rule of Civil Procedure 12(b)(1), the district court dismissed the complaint on the ground that the *Feres* doctrine barred the claims.

**JURISDICTION AND STANDARD OF REVIEW**

We have jurisdiction under 28 U.S.C. § 1291. We review de novo issues regarding subject matter jurisdiction and regarding the applicability of the *Feres* doctrine. *Ritchie*, 733 F.3d at 874.

**DISCUSSION**

The Federal Tort Claims Act ("FTCA") effected a broad waiver of sovereign immunity, rendering the United States liable for the tortious acts of its employees "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Shortly after the FTCA's enactment, however, the Supreme Court held that the Act's waiver of sovereign immunity does not extend to "injuries to servicemen where the injuries arise out of or are in the course of activity incident to service." *Feres*, 340 U.S. at 146.

Over time, the Supreme Court has articulated three policy rationales supporting the *Feres* doctrine: "1) the distinctively federal nature of the relationship between the Government and the armed forces requires a uniform system of compensation for soldiers stationed around the country and around the world; 2) a generous compensation scheme for soldiers (the Veterans' Benefits Act) serves as an ample alternative to tort recovery; and 3) permitting military personnel to sue the armed forces would endanger discipline." *Costo*, 248 F.3d at 866 (citing *Johnson*, 481 U.S. at 684 n.2).

Because of extensive criticism of the doctrine and its underlying justifications, we have "shied away from attempts to apply these policy rationales." *Id.* at 867 (citing *Taber v. Maine*, 67 F.3d 1029, 1043 (2d Cir. 1995)). Instead,

when determining whether an injury occurred "incident to service," thereby implicating the *Feres* doctrine, we engage in a case-specific analysis focusing on four factors:

> (1) the place where the negligent act occurred, (2) the duty status of the plaintiff when the negligent act occurred, (3) the benefits accruing to the plaintiff because of the plaintiff's status as a service member, and (4) the nature of the plaintiff's activities at the time the negligent act occurred.

*McConnell v. United States*, 478 F.3d 1092, 1095 (9th Cir. 2007) (internal quotation marks omitted).  Yet, no factor is dispositive, and we must consider the totality of the circumstances.  *Id.*

Recognizing that our cases have consistently applied the *Feres* doctrine to bar medical malpractice claims predicated on treatment provided at military hospitals to active duty service members,[2] Walter nevertheless argues that application of the doctrine to the facts of this case runs contrary to precedent suggesting that the military discipline rationale is the most important justification for the doctrine. *See, e.g.*, *Ritchie*, 733 F.3d at 874–75.  He emphasizes that

---

[2] *See Jackson v. United States*, 110 F.3d 1484, 1489 (9th Cir. 1997) (hand injury); *Hata v. United States*, 23 F.3d 230, 235 (9th Cir. 1994) (heart attack); *Grosinsky v. United States*, 947 F.2d 417, 418 (9th Cir. 1991) (per curiam) (vasectomy); *Persons v. United States*, 925 F.2d 292, 296 (9th Cir. 1991) (treatment following suicide attempt); *Atkinson v. United States*, 825 F.2d 202, 206 (9th Cir. 1987) (preeclampsia); *Veillette v. United States*, 615 F.2d 505, 507 (9th Cir. 1980) (injuries sustained in motorcycle accident).  *Feres* itself also involved medical malpractice claims for treatment of active duty service members at military hospitals.  *See* 340 U.S. at 137.

the claims at issue involve medical care for a condition unrelated to military service, rendered at a domestic military hospital, indistinguishable from treatment that any civilian spouse might seek at that same facility. Walter argues that application of the *Feres* doctrine in this medical malpractice case cannot be reconciled with caselaw finding it inapplicable in certain non-medical malpractice cases. *See Schoenfeld v. Quamme*, 492 F.3d 1016, 1023–26 (9th Cir. 2007) (no *Feres* bar for claim regarding injury sustained in auto accident on base road, accessible to public, that occurred while the plaintiff was "on liberty"); *Johnson v. United States*, 704 F.2d 1431, 1436–39 (9th Cir. 1983) (no *Feres* bar for claim regarding injury sustained due to negligence at on-base club where the plaintiff worked in essentially civilian capacity while off duty).

We, too, previously "have reached the unhappy conclusion that the cases applying the *Feres* doctrine are irreconcilable." *Costo*, 248 F.3d at 867. Because "the various cases applying the *Feres* doctrine may defy reconciliation," *McConnell*, 478 F.3d at 1095, our precedent dictates that "comparison of fact patterns to outcomes in cases that have applied the *Feres* doctrine is the most appropriate way to resolve *Feres* doctrine cases," *Costo*, 248 F.3d at 867 (quoting *Dreier v. United States*, 106 F.3d 844, 848 (9th Cir. 1997)). And, here, that analysis begins and ends with *Atkinson*, 825 F.2d 202.

*Atkinson* held that the *Feres* doctrine barred a medical malpractice claim by a servicewoman who alleged that she received negligent prenatal treatment at a domestic military hospital. *Id.* at 205–06. There, the plaintiff, who was an active duty U.S. Army Specialist, went to Tripler Army Medical Center during the second trimester of her pregnancy complaining of multiple symptoms. *Id.* at 203. She was sent

home twice without treatment, but after her third visit, she was hospitalized for preeclampsia and delivered a stillborn child.  *Id.*  She alleged that the medical center's failure to diagnose and treat her condition resulted in the stillbirth of her child and caused her permanent bodily injuries and emotional distress.  *Id.*

As here, *Atkinson* involved medical treatment of an active duty servicewoman at a domestic military hospital for a condition of pregnancy unrelated to military service. Moreover, *Atkinson* held specifically that the claim was barred despite the court's belief "that the military discipline rationale [did] not support application of the *Feres* doctrine" in the circumstances.  *Id.* at 206.  We must follow *Atkinson*'s holding here.

## CONCLUSION

Lieutenant Daniel served honorably and well, ironically professionally trained to render the same type of care that led to her death.  If ever there were a case to carve out an exception to the *Feres* doctrine, this is it.  But only the Supreme Court has the tools to do so.

**AFFIRMED.**